1
2
3
4
5                    **UNITED STATES DISTRICT COURT**
6                         **DISTRICT OF NEVADA**
7
8    DAVID CHERRY, *et al.*,                    )
                                                )
9                      Plaintiffs,              )        Case No. 2:11-cv-01783-JCM-GWF
                                                )
10   vs.                                        )        **ORDER**
                                                )
11   CLARK COUNTY SCHOOL DISTRICT, *et al.*,    )
                                                )
12                     Defendants.              )
     _____)
13
14          This matter is before this Court pursuant to Amended Order (#34), filed on July 26, 2012,
15   and the Notice of Objection to Disclosure of Information (#36), filed on August 27, 2012 by
16   Defendant Clark County School District on behalf of certain parents and students pursuant to the
17   provisions of the Amended Order.  The Court has also reviewed Plaintiffs' Reply to Objection to
18   Disclosure of Information (#40) filed on September 5, 2012 and the Defendant's Reply in Support
19   of Notice to Disclosure of Information (#41) filed on September 10, 2012.
20                              **BACKGROUND**
21          Plaintiffs David and Alexandria Cherry have brought this action on behalf of themselves
22   and their minor child, Jacob Cherry, against the Clark County School District (CCSD), Twitchell
23   Elementary School Principal Susan M. Smith, and Special Education Teacher Sandra Piilo, alleging
24   causes of action for denial of their constitutional rights to substantive due process and equal
25   protection of the laws, violation of Section 504 of the Rehabilitation Act, 29 U.S.C. §§ 794 et.seq.,
26   violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, et.seq., violation of the Civil
27   Rights Act of 1964, 42 U.S.C. §2000d et.seq., defamation, invasion of privacy/false light, negligent
28   infliction of emotional distress, and negligent supervision.

Plaintiffs allege that Jacob Cherry, who is African-American, suffers from severe autism and apraxis, which renders him non-verbal. *Amended Complaint (18)*, ¶5.  During the 2007-09 school years, Jacob attended Gibson Elementary School where he was provided with communication devices or training that de-escalated his frustration and bewilderment during transitions in classroom time.  The staff also worked with Jacob on using a "potty button" to signal when he had to use the restroom.  ¶11.  During the 2009-10 school year, Jacob attended Bartlett Elementary School where the communication devices or training, including the potty button, were abandoned for no known reason.  Plaintiffs allege that Jacob began to act out and became increasingly upset, hysterical and difficult to teach.  The CCSD was indifferent to Jacob's deterioration, ignored his parent's concerns and requests, and instead blamed his lack of progress on his disability.  ¶13.

For the 2010-2011 school year, Jacob was transferred to Twitchell Elementary School where Defendant Piilo was the special education teacher and Defendant Smith was school principal.  Plaintiffs allege that "[w]hile Jacob was in a self-contained program with other disabled students, he was the only black child and the only student with a level of disability with his severity." *Amended Complaint (#18),* ¶15.  Plaintiffs allege that they requested multiple times that CCSD implement a communications system with Jacob, but that Defendants Piilo and Smith failed to implement such a system, and CCSD and Smith refused to provide trained and qualified personnel to work with Jacob.  As a result, Jacob's behavior deteriorated to the point of extremely self-injurious behaviors of head-banging, self-hitting, self-biting, and tantrums. ¶17.

Plaintiffs allege that beginning in November 2010, Defendants Smith and Piilo began a campaign of "histrionic emails," distributed to third parties, accusing Jacob of being a danger to those around him, and falsely stating Jacob had fractured a teacher's arm and fractured two fingers of a classroom assistant.  Plaintiffs allege that Defendants Smith and Piilo engaged in a series of concerted emails and discussions with school district personnel and other parents regarding the danger presented by Jacob with the intent of having him committed. *Amended Complaint (#18),* ¶20.  When the Defendants failed to have Jacob committed, they ceased to instruct him completely and instead segregated Jacob in the corner of the classroom on a mat with desks lined up as a fence

to separate him from other students.  Jacob was not allowed to participate in classroom activities, instruction, or school wide assemblies. ¶21.  Plaintiffs allege that Defendants' statements about the danger that Jacob posed to others were defamatory and portrayed him in a false light.  ¶¶*60-63, 70.*

Defendant CCSD previously produced an email letter that a parent of another child in the special education classroom sent to Defendant Smith on or about February 4, 2011.[1]  *Motion to Compel (#22), Exhibit 1.*  The parent expressed concern for the safety of his/her three year old child who "had been physically touched in an inappropriate and hurtful manner by a 6 year old classmate."  The parent stated that "[t]his situation has not been resolved and we feel it is time to consider taking further action."  The letter goes on to discuss the parents' concern for their child's safety.

Plaintiffs served interrogatories and requests for production of documents on Defendant CCSD requesting (1) a list of the parents who volunteered in the special education classroom at Twitchell Elementary and the dates and times thereof; (2)  the identities of all parents who made threats to file lawsuits concerning Jacob Cherry; and (3) documents relating to all communications to or from Defendants regarding threats of lawsuits concerning Jacob Cherry.  Defendants objected to these requests based on the students' and parents' privacy rights and the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. §1232g(b)(2), which provides that:

> No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of releasing, or providing access to, any personally identifiable information in education records other than directory information . . . unless –
>
> > (A) there is a written consent from the students' parents specifying records to be released, the reasons for such release, and to whom, and with a copy of the records to be released to the student's parents and the student if desired by the parents, or
> >
> > (B) . . . such information is furnished in compliance with judicial order, or pursuant to any lawfully issued subpoena upon condition that parents and students are notified of all such orders or subpoenas in advance of compliance therewith by the educational institution or agency.

---

[1] Defendant redacted the identities of the parents and their child.

3

Federal regulations adopted pursuant to 20 U.S.C. §1232g state that the term "personally identifiable information" includes but is not limited to the student's name, the name of the student's parent or other family members and the address of the student or student's family.  34 C.F.R. §99.3.  The regulations also state that where the disclosure is to comply with a judicial order or lawfully issued subpoena, the educational agency may only disclose the information if it makes a reasonable effort to notify the parent or eligible student of the order or subpoena in advance of compliance, so that the parent or eligible student may seek corrective action. 34 C.F.R. §99.3(9)(I) and (ii).

The Court conducted a hearing regarding Plaintiff's Motion to Compel (#22) on July 26, 2012.  The Court concluded that the information regarding the identities of parents who visited the subject classroom or who threatened to file lawsuits concerning Jacob Cherry is relevant to the investigation of the parties' claims and defenses and is generally discoverable under Rule 26(b) of the Federal Rules of Civil Procedure.  The Court therefore granted Plaintiffs' motion to compel as follows:

1.  Defendants shall disclose the visitor logs for the classroom Jacob Cherry was assigned to, including the names of the visitors and the date and times of the visits for the Spring 2011 semester.

2.  Defendants shall disclose the names and last known addresses of the individuals who threatened to file lawsuits concerning the behavior of Jacob Cherry, including the date and form of their complaint.

3.  Defendants shall disclose copies of all communications to CCSD or from CCSD regarding threats of lawsuits concerning Jacob Cherry.  Defendants shall provide these communications in unredacted form, except as to any individual child's name or personal identifiable information.

4.  Defendants shall have **30 days** from the date of this order to produce the above information, so as to allow Defendants time to provide notice to the affected individuals and an opportunity to object to disclosure of their personally identifiable information.

5.  If any individual objects to the disclosure of their personal information, that individual shall promptly contact Defendants' counsel regarding the objection.  Defendants shall then inform the Court and Plaintiffs' counsel of the basis and reason for the objection.  Plaintiffs' counsel will have 14 days from the date of notice of the objection to file a response with the Court.  The Court

will then make a determination upon the validity of the objection.

*Amended Order (#34).*

Although not reflected in Amended Order (#34), the Court also stated during the hearing that the disclosure of the foregoing information would be subject to an overall protective order prohibiting the disclosure of the parent's identities and other information to individuals or entities who are not involved in this case.   *See Minutes of Proceedings (#32).*

Pursuant to the Court's order, Defendant CCSD sent letters to the subject parents advising them that CCSD has been sued by the parents of one of the students ("J.C.") who was in their child's classroom during the 2010-2011 school year at Twitchell Elementary School.  The letter stated that the Court has ordered CCSD to release to J.C.'s parents' attorney the name and last known address of any parent who complained about J.C. that year, as well as a copy of any written complaints.  The letter further stated that CCSD's records show that the parent(s) had lodged a complaint about J.C. during the 2010-2011 school year and "[t]herefore CCSD is compelled to disclose your name and last known address to J.C.'s parents' attorney" and to disclose a copy of any written complaint made by the parent.  The letter also advised the parents of the right to object and that the court would be advised of the objection.  *See Plaintiffs' Reply to Objection to Disclosure of Information (#40), Exhibit 1.*

In its *Notice of Objection to Disclosure of Information (#36)*, the CCSD states that three families, identified as Families A, B and C, were affected by the July 26, 2012 order.  Families A and B objected to the disclosure of their personally identifiable information. Family A sent a letter to CCSD's counsel stating that they did not want their identities or that of their child disclosed to the Plaintiffs.  Family A stated that it was their understanding at the time they filed their complaint, that their and their child's identities would be protected from disclosure by the school district. Family A also objected to the disclosure of their identities because of their concern regarding possible retaliation by J.C's parents.  *Notice of Objection (#36), Exhibit 1.*

CCSD's counsel spoke by telephone with the parent(s) in Family B on August 23, 2012. Family B told CCSD's counsel that they did not want their identities disclosed because they wished to protect their privacy and because their complaints were made during an emotional time which

they would like to put behind them.  They also stated that they did not want to be dragged into litigation, and that they made their complaints purely out of concern for their child's safety and believed the letters were and would always remain private.  Family B also stated that they are concerned for the privacy and safety of their child and want to "avoid any potential repercussions, including potential bullying, in the event their letters were ever made public or traced back to them."  *Notice of Objection (#36), Exhibit 2, Declaration of CCSD's Counsel, ¶3.*

CCSD's counsel spoke by telephone with the parent(s) in Family C on August 24 and 27, 2012. Family C stated that they would be willing to consent to the production of their written complaints, but only on the condition that their child's name would be redacted, the letters would be used only for purposes of this litigation and the letters would not be filed with the Court. "Family C also drafted a letter to accompany the production of their letters, so that they could advise Plaintiffs of the basis for their complaints.  Furthermore, Family C consented to the release of the parents' names, addresses and telephone numbers."  *Notice of Objection (#36), Exhibit 2, Declaration of CCSD's Counsel, ¶4.*

## DISCUSSION

The Family Education Rights and Privacy Act ("FERPA"), 20 U.S.C. §1232g, protects educational records and personally identifiable information of students from improper disclosure. *Doe v. Woodward County Bd. of Educ.*, 213 F.3d 921, 926 (6th Cir. 2000) and *United States v. Miami University*, 294 F.3d 797, 806 (6th Cir. 2002). *See also E.W. v. Moody*, 2007 WL 445962, *2 (W.D.Wash. 2007) ("Congress passed FERPA to protect the privacy of students and their parents.").  The statute, and regulations enacted pursuant thereto, however, permit the disclosure of personally identifiable information pursuant to a judicial order or subpoena so long as the parent or student is notified prior to compliance and given an opportunity to object or take corrective action.

In *Ellis v. Cleveland Municipal School Dist.*, 309 F.Supp.2d 1019 (N.D.Ohio 2004), a student filed suit against the school district regarding substitute teachers' alleged corporal punishment of students.  The plaintiff moved to compel production of incident reports related to altercations between substitute teachers and students, student and employee witness statements, and information related to subsequent discipline imposed on substitute teachers.  The school district

6

objected to production of the information based on FERPA.  The court held that FERPA did not

apply because the discovery requests sought the disclosure of records relating to teachers and which

only tangentially related to students.  The court further stated:

> Even if the records at issue in this case were "education records" as
> defined by FERPA that would not necessarily end the inquiry.
> FERPA is not a law which absolutely prohibits the disclosure of
> educational records; rather it is a provision which imposes a financial
> penalty for the unauthorized disclosure of educational records.
> *Bauer,* 759 F.Supp. at 589; *Rios v. Read,* 73 F.R.D. at 598 (noting
> that the statute did not intend to create a "school-student privilege
> analogous to a doctor-patient or attorney-client privilege.")  Thus,
> while FERPA was intended to prevent schools from adopting a
> policy or engaging in a practice of releasing educational records, it
> does not, by its express terms, prevent discovery of relevant school
> records under the Federal Rules of Civil Procedure.  *Rios v. Read,* 73
> F.R.D. 589, 598 (D.C.N.Y.1977).  Given FERPA's underlying
> privacy concerns, it does, however, place a higher burden on a party
> seeking access to student records to justify disclosure than with the
> discovery of other types of records. *Id.*  Plaintiff has met her burden
> in this case as the information she seeks is material and necessary to
> the prosecution of her claims and uniquely within the knowledge and
> possession of the defendant School District.

*Ellis*, 309 F.Supp.22d at 1022.

Other federal court decisions agree with *Ellis'* interpretation of FERPA.  *See Garza v. Scott

and White Memorial Hosp.*, 234 F.R.D. 617, 624 (W.D.Tex. 2005) (FERPA does not create an

evidentiary privilege and documents protected by FERPA are discoverable in the context of civil

litigation); *Nichols v. The Univ. of Southern MS*, 2009 WL 1565749,*1 (S.D.Miss. 2009) (same).

In *Wallace v. Educational Community*, 2006 WL 276135 (E.D.Mich. 2006), the plaintiff alleged

that he was wrongfully discharged from his position as a school maintenance worker based on his

alleged inappropriate sexual behavior toward students.  During discovery the defendant provided

plaintiff with student statements relating to plaintiff's alleged sexual behavior, but redacted the

students' names and addresses.  The court held that the students' identities were not protected from

disclosure by FERPA.  The court, however, limited the disclosure of the student's identities to the

parties' counsel only and precluded disclosure to the plaintiff and the defendant union.

In this case, Plaintiffs allege that Defendants made false and defamatory statements about

the danger that Jacob Cherry posed to others which Plaintiffs apparently contend prompted parents

of other children in the same classroom to threaten to file suit.  Plaintiffs are entitled to determine

whether the parents' complaints and threats to file lawsuits were based on events that they actually witnessed or on statements made by Defendants Smith, Piilo or other CCSD employees. The parents may also have observed conditions in the classroom that are relevant to the claims and defenses in this case. Plaintiffs are, therefore, entitled to obtain the names and addresses of the parents who made such complaints or threats of suit and to take their depositions. The Court understands the parents' desire to protect their anonymity and to not be drawn into the dispute between the Plaintiffs and Defendants. These are not sufficient reasons, however, to deny Plaintiffs' access to the identities of individuals who possess information that is relevant and material to their claims.

Two of the families have expressed concern about possible retaliation against them or their children if their identities are disclosed. Plaintiffs state, however, that Jacob Cherry no longer attends the same school as the other children, and that Plaintiffs have no intention to retaliate against the parents or their children. The Court has no reason to believe that Plaintiffs will engage in such conduct. Plaintiffs also state that they have no intention to sue the other parents because of their complaints or threats to file suit. *See Reply to Objection to Disclosure of Information (#40), pg. 4.*

Plaintiffs do not seek to compel disclosure of the children's identities and also agree to the entry of a protective order pursuant to Fed.R.Civ.Pro. 26(c) that the parents' identities will not be disclosed to persons not involved in this action. Plaintiffs are also willing to stipulate to the use of aliases for the parents in documents filed in the course of litigation. *Id. pgs. 5-6.* The parents should be informed, however, that in addition to being required to appear for depositions in this case, they may also be called to testify as witnesses at a public trial of this action and that their written complaints may be introduced into evidence at that trial. Accordingly,

**IT IS HEREBY ORDERED,** in accordance with *Amended Order (#34),* that Defendants shall within seven (7) days of the filing of this order:

1.      Disclose to Plaintiffs' counsel the names and last known addresses of the parents of other children who threatened to file lawsuits concerning the behavior of Jacob Cherry, including the dates and form of their complaints; and

8

1    2.    Produce to Plaintiffs' counsel copies of all communications to CCSD or from CCSD

2  regarding threats of lawsuits concerning Jacob Cherry.  Defendants shall provide these

3  communications in unredacted form, except as to the identity of any child other than Jacob Cherry.

4    **IT IS FURTHER ORDERED** that the disclosure of the foregoing information is restricted

5  to the parties in this action, their counsel and counsel's staff, or expert witnesses who may testify in

6  this action.  Such persons shall be informed that they are bound by the provisions of this protective

7  order.  The parents' identities or their written complaints shall not be disclosed to any person who

8  has no interest or involvement in this action.  The parties shall identify the parents by alias names,

9  such as by initials, in any non-dispositive motion or related pleadings or documents filed in this

10  action, and shall redact the parents' names if contained in any document filed with respect to any

11  such non-dispositive motion.

12    **IT IS FURTHER ORDERED** that Defendants' counsel shall mail a copy of this Order to

13  the affected parents within seven (7) days of the filing of this order.

14    DATED this 21st day of September, 2012.

15

16    _____

17    GEORGE FOLEY, JR.
      United States Magistrate Judge

18

19

20

21

22

23

24

25

26

27

28