UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DAVID CHERRY, et al., <br><br> Plaintiff(s), <br><br> v. <br><br> CLARK COUNTY SCHOOL DISTRICT, et al., <br><br> Defendant(s). | 2:11-CV-1783 JCM (GWF) |

**ORDER**

Presently before the court is defendants', Clark County School District, Sandra A. Piilo, and Susan M. Smith, motion for partial summary judgment. (Doc. # 45). Plaintiffs, Alexandria and David Cherry, as individuals and on behalf of their son Jacob Cherry, filed a response in opposition (doc. # 49), and defendants filed a reply (doc. # 57).

Also before the court is defendants' renewed motion to dismiss, or, alternatively, motion for partial summary judgment. (Doc. # 48). Plaintiffs filed a response in opposition (doc. # 55), and defendants filed a reply (doc. # 65).

Also before the court is defendants' motion to seal. (Doc. # 54). Plaintiffs have not filed a response in opposition to the motion to seal and the deadline date for filing a response in opposition has expired.

Also before the court is defendants' countermotion for summary judgment. (Doc. # 63). Plaintiffs have filed a response in opposition (doc. #68), and defendants filed a reply (doc. # 70).

**James C. Mahan**
**U.S. District Judge**

Also before the court is plaintiffs' countermotion for summary judgment. (Doc. # 64).[1] Defendants filed a response in opposition (docs. ## 62 and 66)[2], and plaintiffs filed a reply (doc. # 67).

There are several pending motions in this case stemming from defendants' motion for partial summary judgment as to damages only. The motion for partial summary judgment on damages set off a series of motions, including motions for summary judgment as to liability. Even though there are several pending motions, the motions relate to two issues: (1) liability as to each of plaintiffs' ten causes of action; and, (2) potential damages amount if liability. The court has considered all filings on these issues.

**I.     Background**

The plaintiffs in this case are Alexandria and David Cherry. They are the parents of Jacob Cherry. Jacob is autistic and non-verbal. Alexandria and David bring this lawsuit as individuals and as guardians ad litem of Jacob. Jacob is eligible for special education and related services.

The defendants in this case are Clark County School District ("CCSD"), Susan M. Smith, and Sandra A. Piilo. Smith is the principal at Twitchell Elementary School. Piilo is a special education teacher at Twitchell. CCSD employs both Smith and Piilo.

There are more disputed facts in this case than undisputed facts. Additionally, the overall theme of the facts is messy and emotional.

However, prior to addressing the facts and legal issues in this case, it is necessary to provide a brief overview of the substantive and procedural provisions of relevant federal regulations. The Individuals with Disabilities Act ("IDEA"), codified at 20 U.S.C. §1400 *et seq.*, is a comprehensive federal scheme. IDEA "confer[s] on disabled students a substantive right to public education and

---

[1] Document number 64 is identical to document number 49. Defendants filed a motion for partial summary judgment that made arguments concerning damages in the event of liability. Plaintiffs response, document number 49, included a response to the defendants' motion for partial summary judgment and a countermotion for summary judgment as to liability. Plaintiff then re-filed the same document, and the countermotion for summary judgment became document number 64.

[2] Document numbers 62 and 63 are identical documents. Document number 62 is technically a response and document number 63 is technically a countermotion for summary judgment as to liability.

provide[s] financial assistance to enable states to meet their financial needs." *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1300 (9th Cir. 1992). "Federal funding is conditioned upon state compliance with the IDEA's extensive substantive and procedural requirements." *Id.* "To qualify for federal funds, the state must have in effect 'a policy that assures all children with disabilities the right of a free appropriate public education.'" *Id.* (quoting 20 U.S.C. § 1412(1)). The "free appropriate public education" is often referred to as a "FAPE."

"Parental involvement is a central feature of IDEA." *Id.* "Parents participate along with teachers and school district representatives in the process of determining what constitutes a [FAPE] for each disabled child." *Id.* "This process culminates in the formulation of an individualized education program, tailored to the child's unique needs." *Id.* (citing 20 U.S.C. §§ 1401(a)(18), (20)).

On September 28, 2007, before Jacob turned three-years-old, Jacob received his first individualized education plan ("IEP") from CCSD. After this initial IEP and through the time he completed the 2010-2011 school year at Twitchell Elementary School as a six-year-old (the end date of events giving rise to this lawsuit), Jacob received nine additional annual or revisionary IEPs from CCSD.

Jacob occasionally engages in protest behaviors. Protest behaviors are also know as self-stimulation or "stims." Stims can include a variety of behavior. In Jacob's case, the stims usually manifested in the form of Jacob striking himself and/or banging his head. At the relevant times, Jacob was non-verbal. He would stim to express a variety of emotions including hunger, frustration, thirst, or fatigue. Jacob would also "elope," meaning he would try and wander or run off to escape when overwhelmed from a given situation.

Jacob began school at Twitchell Elementary School (a CCSD school) in the 2010-2011, school year. At Twitchell, Jacob was placed in a self-contained program primarily with other children with autism. The primary facts giving rise to this lawsuit relate to events that occurred, or did not occur, at Twitchell. The parties generally dispute the severity and frequency of Jacob's stims prior to enrollment at Twitchell and after Jacob began school at Twitchell.

. . .

**James C. Mahan**
**U.S. District Judge**

Generally, plaintiffs provide disputed facts that Jacob's conditioned deteriorated at Twitchell, that Jacob was left hungry and thirsty, unnecessarily restrained, racially discriminated against (Jacob is African-American), that Jacob often left school soiled in his own feces and urine, and that Smith and Piilo conspired to have Jacob reassigned from Twitchell to a special needs school. Generally, defendants provide disputed facts that, while Jacob's year at Twitchell was not perfect, CCSD and its educators and administrators employed a variety of tools to help Jacob succeed.

While at Twitchell, Jacob received IEPs. His IEP team included his parents, Piilo, Smith, an occupational therapist, speech/language pathologist, and an autism deliberation team. Jacob received the following services at Twitchell: direct speech therapy, direct occupational therapy, a home-intervention program, self-help skills training, and a behavioral intervention plan.

At some point during Jacob's first year at Twitchell, parents of other children in the special needs class began to complain about Jacob. Other parents believed that Jacob's stims might be a danger and risk to their children and even threatened a lawsuit. Some of the concerns of other parents have been traced back to messages from a class aide. CCSD concedes a class aide, Kayla V., disseminated information to parents that she was not authorized to convey.

Piilo and Smith felt the need to alert their superiors to the other parents' concerns, their own concerns about Jacob, and how his behavior might affect other children in the classroom. Smith and Piilo exaggerated some of the content of the messages sent to superiors. At some point during the year, CCSD administrators considered reassigning Jacob to a special needs school.

It is undisputed that CCSD brought in a number of experts to consult, observe, and advise on how best to educate and care for Jacob. This included a "Low Incidence Disabilities Team," which provides parents and teachers focused autism support training. Additionally, Ron Leaf, an expert in the field of teaching children with autism provided additional ideas and recommendations regarding Jacob.

On January 10, 2011, Jacob's parents filed a due process complaint on his behalf.[3] CCSD

---

[3] The court discusses the significance of filing a due process complaint and the remedies that it affords in section II *infra*.

James C. Mahan
U.S. District Judge

- 4 -

conducted a full investigation of the allegations. The CCSD division for monitoring and compliance exclusively communicated with the Cherrys during the investigation. On March 18, 2011, the Cherrys withdrew their due process complaint. On May 26, 2011, the office of compliance and monitoring implemented a corrective action plan. The plan included providing Jacob with 120 hours of compensatory education services. On or about July 18, 2011, CCSD increased the amount of compensatory education provided to Jacob to 180 hours.

The facts above gave rise to the instant lawsuit. Plaintiffs brought ten causes of action against defendants. The pending motions primarily focus on (1) liability on the ten causes of action and (2) the amount of damages sought by plaintiffs.

## II. Renewed Motion to Dismiss

Defendants have renewed their motion to dismiss for failure to exhaust administrative remedies, or, in the alternative, summary judgment regarding exhaustion. Defendants argue that when plaintiffs seek damages or remedies covered by IDEA then the plaintiffs must first exhaust their claims through required administrative procedures. This is true. Plaintiffs argue that either (1) exhaustion was not required for the reasons articulated in *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1303-04 (9th Cir. 1992), or (2) that exhaustion did occur. The court must make two determinations: (1) whether exhaustion is required in this case; and, (2) if exhaustion is required, whether it occurred.

*A. The Exhaustion Requirement*

IDEA's exhaustion requirement provides:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C. 12101 et seq.], Title V of the Rehabilitation Act of 1973 [29 U.S.C. 790 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l) (alterations in original).

. . .

In *Payne v. Peninsula Sch. Dist.*, the Ninth Circuit adopted a "relief-centered" approach that district courts should employ when determining whether a plaintiff must meet IDEA's exhaustion requirements. 653 F.3d 863, 874 (9th Cir. 2011). The Ninth Circuit clarified the exhaustion requirement of IDEA, explaining that "IDEA's exhaustion provision applies only in cases where the relief sought by a plaintiff in the pleadings is available under the IDEA. Non-IDEA claims that do not seek relief available under the IDEA are not subject to the exhaustion requirement, even if they allege injuries that could conceivably have been redressed by the IDEA." *Id.* at 871.

Under the relief-centered approach, IDEA requires exhaustion in three situations: (1) "when a plaintiff seeks an IDEA remedy or its functional equivalent"; (2) "where a plaintiff seeks prospective injunctive relief to alter an IEP or the educational placement of a disabled student"; and, (3) "where a plaintiff is seeking to enforce rights that arise as a result of a denial of a free appropriate public education, whether pled as an IDEA claim or any other claim that relies on the denial of a FAPE to provide the basis for the cause of action." *Id.* at 875. In the third situation, the court explicitly notes that if a claim for damages under § 504 of the Rehabilitation Act is premised on a violation of the IDEA, relief flows directly from the IDEA and therefore exhaustion is required. *Id.* at 875.

"[W]hen determining whether the IDEA requires a plaintiff to exhaust, courts should start by looking at a complaint's prayer for relief and determine whether the relief sought is also available under the IDEA. If it is not, then it is likely that § 1415(l) does not require exhaustion in that case." *Id.* at 875.

In this case, plaintiffs' amended complaint seeks relief "[f]or actual and compensatory damages in an amount to be ascertained according to proof." (Doc. # 18 at p. 18). At the motion to dismiss stage, the court allowed the claims to proceed forward under the remedy-centric approach because it is not proper "for courts to assume that money damages will be directed toward forms of relief that would be available under the IDEA." *Payne*, 653 F.3d at 877. "[T]o the extent that a plaintiff has laid out a plausible claim for damages unrelated to the deprivation of a FAPE, the IDEA does not require her to exhaust administrative remedies before seeking them in court." *Id.* at 877.

James C. Mahan
U.S. District Judge

- 6 -

Plaintiffs assert ten causes of action, some state tort claims and some federal claims. The state law claims in this action, and the damages sought for those claims, are not subject to IDEA exhaustion. The federal claims may proceed forward without exhaustion if the remedies are damages to retrospectively compensate the plaintiffs for constitutional wrongs (e.g., non-IDEA remedies).

The complaint alleges, among other things, that defendants allowed Jacob to go hungry, thirsty, improperly restrained Jacob, segregated Jacob based on his race, discriminated against Jacob based on his race, and allowed Jacob to urinate and defecate on himself. Remedies sought for these alleged federal violations could be wholly independent of a loss of a FAPE. The court permitted the claims to proceed pass the motion to dismiss because based on a fair reading of the complaint, the damages sought remedies independent of IDEA remedies. (*See generally* amended compl. at ¶ 29 ("Plaintiffs have sustained actual damages, including lost wages, injuries to the person, pain, severe grievous mental and emotional suffering, humiliation, shame . . . .")).

However, the *Payne* court foresaw the possibility of shifting or altering remedies as litigation proceeds through discovery. Specifically, the Ninth Circuit held:

> Because § 1415(l) focuses on the 'relief' sought in an action, it is conceivable that a district court, in entertaining a motion to dismiss, might not *initially* conclude that exhaustion is required for certain claims, but might recognize subsequently that, in fact, the remedies being sought by a plaintiff could have been provided by the IDEA. In such a case, we think the defendants should be permitted to provide evidence showing that the relief being sought by that plaintiff was, in fact, available under the IDEA. Because the line between damages available under other remedial sources and relief available under the IDEA is less than clear, the finder of fact should, in assessing remedies, be permitted to assess the evidence and withhold those that are unexhausted and available under the IDEA.

*Payne*, 653 F.3d at 882. The situation in the instant case is the exact situation foreseen by the *Payne* court. At the motion to dismiss stage, plaintiffs made no representations to the court that would indicate that the damages sought would be damages that could, or should, be provided for via IDEA remedies. If anything, plaintiffs represented that their alleged damages would stem from retrospective money damages for physical and emotional abuse towards Jacob and his parents. (*See* doc. # 11, p. 6-7). The plaintiffs did not represent that the relief requested would be remedies afforded by IDEA, such as placement in a private school or loss of a FAPE. (*Id.*).

James C. Mahan
U.S. District Judge

- 7 -

During discovery, plaintiffs disclosed that they seek cash value of services for private education. Plaintiffs now seek approximately $181,500 for eleven years of private school tuition and approximately $165,000 for eleven years of private speech therapy, an aide, private occupational therapy, and home services. Plaintiffs seek a total of $624,842.50 of damages for Jacob, with $346,500 allocated for private school and private therapy.

Using the remedy-centric approach from *Payne*, the court finds that at least $346,500 falls within the type of relief available under IDEA–private schooling to compensate for a violation of IDEA. *Payne*, 653 F.3d at 877 ("If the measure of a plaintiff's damages is the cost of counseling, tutoring, or private schooling–relief available under the IDEA–then the IDEA requires exhaustion."). If a plaintiff seeks any relief available under IDEA then the plaintiff must first exhaust the IDEA administrative procedures before seeking that relief in a federal court.

Plaintiffs argue that one of the exceptions from *Hoeft* applies that exempts a plaintiffs' failure to exhaust administrative remedies under IDEA. "There are certain situations in which it is not appropriate to require the use of due process and review procedures set out in . . . IDEA before filing a law suit." *Hoeft*, 967 F.2d at 1303. The three exceptions include: "(1) it would be futile to use the due process procedures [ ]; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; [and,] (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies (e.g., the hearing officer lacks the authority to grant the relief sought)." *Id.* at 1303-04. The party asserting that one of the *Hoeft* exceptions apply bears the burden of proof. *See Kutasi v. Las Virgenes Unified Sch. Dist.*, 494 F.3d 1162, 1168 (9th Cir. 2007) ("[A] party that alleges futility or inadequacy of IDEA administrative procedures bears the burden of proof.").

The court finds that none of the *Hoeft* exceptions apply in this case. Plaintiffs make only cursory arguments that any exception could apply and have not met their burden. Additionally, for reasons further articulated in section II.B. *supra*, plaintiffs can not argue futility or any other exception because CCSD began an investigation after the filing of a due process complaint, plaintiffs withdrew the complaint, CCSD awarded 120 hours of compensatory education to Jacob, and CCSD

later increased the award to 180 hours.

*B.    Did Exhaustion Occur In This Case*

The court must now turn to whether plaintiffs exhausted their IDEA claims before filing the instant lawsuit. The Supreme Court has laid out, in great detail, the IDEA administrative process.

"When a party objects to the adequacy of the education provided [to their child], the construction of the IEP, or some related matter, IDEA provides procedural recourse: It requires that a State provide '[a]n opportunity for any party to present a complaint . . . with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provisions of a free appropriate public education to such child.'" *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 525 (2007) (citing 20 U.S.C. § 1415(b)(6)). "By presenting a complaint a party is able to pursue a process of review that, as relevant, begins with a preliminary meeting 'where the parents of the child discuss their complaint' and the local educational agency 'is provided the opportunity to [reach a resolution].'" *Id.* (citing § 1415(f)(1)(B)(i)(IV)). "If the agency 'has not resolved the complaint to the satisfaction of the parents within 30 days,' § 1415(f)(1)(B)(ii), the parents may request an 'impartial due process hearing,' § 1415(f)(1)(A), which must be conducted either by the local educational agency or by the state education agency, and where a hearing officer will resolve issues raised in the complaint, § 1415(f)(3)." *Id.*

"If the local educational agency, rather than the state educational agency, conducts this hearing, then 'any party aggrieved by the findings and decision rendered in such a hearing may appeal such findings and decision to the State educational agency.'" *Id.* at 526 (citing § 1415(g)(1)). "Once the state educational agency has reached its decision, an aggrieved party may commence suit in federal court." *Id.* at 526.

The exhaustion provision of 20 U.S.C. § 1415(l) "is designed to allow for the exercise of discretion and educational expertise by state and local agencies, afford full exploration of technical educational issues, further development of a complete factual record, and promote judicial efficiency by giving agencies the first opportunity to correct shortcomings in their educational programs for disabled children." *Payne*, 653 F.3d at 875-76. "The exhaustion requirement is intended to prevent

James C. Mahan
U.S. District Judge

- 9 -

courts from acting as ersatz school administrators and making what should be expert determinations about the best way to educate disabled students." *Id.* at 876.

On or about January 10, 2011, plaintiff filed a request for due process under the administrative remedies of IDEA. Once a due process complaint is served upon CCSD, the compliance and monitoring division within CCSD investigates the claims and assertions in the complaint. On or about March 18, 2011, plaintiffs withdrew their request for due process without prejudice. The investigation was still ongoing at the time that plaintiffs withdrew their request. Plaintiffs specifically reserved their right to re-file their due process complaint at the time of the withdrawal.

Plaintiffs represent to the court that they withdrew their due process complaint at the request of defendants. Defendants purportedly requested that plaintiffs engage with defendants in an informal resolution of plaintiffs' claims about a denial of a FAPE.

After plaintiffs withdrew their due process complaint, the compliance and monitoring division continued to conduct a full investigation of plaintiffs' allegations of a denial of a FAPE at Twitchell. On or about May 26, 2011, a compliance and monitoring division employee, Phoebe Redmond, informed plaintiffs that her office determined a loss of a FAPE had occurred and awarded the Cherrys 120 hours of compensatory education. The plaintiffs requested a larger award. On or about July 18, 2011, the compliance and monitoring division modified the award to a total of 180 hours of compensatory education. In a letter confirming the increase in compensation, Michael Harley, a compliance officer, stated that CCSD would continue to work collaboratively with the Cherrys through the IEP process to address any further concerns that the Cherrys may have had.

The due process complaint was never re-filed, nor did the parties pursue any more informal discussions. It does not appear that plaintiffs appealed their award to any state educational agency. It does not appear that a state educational agency ever reviewed the award. Plaintiffs then filed the instant lawsuit in November 2011. The court finds that some level of informal resolution occurred. However, at this stage, the court cannot determine whether this informal resolution satisfies the complex IDEA statutory requirements.

**James C. Mahan**
**U.S. District Judge**

- 10 -

The parties' motions on exhaustion focus on whether exhaustion was required under IDEA based on the new relief sought by plaintiffs. The court has found that exhaustion was required based on the new remedies sought by plaintiffs (if plaintiffs intend to seek the private education for Jacob, which is one of the remedies afforded under IDEA). *See* section II.A *supra*. The court now narrows the issue to whether exhaustion did in fact occur. The court orders supplemental briefing on this narrow issue.

The factual record is presently incomplete on whether exhaustion occurred, which precludes the court from resolving the issue with certainty. Further, the parties did not present arguments, based on case law, whether exhaustion has occurred based on the facts presented in this case. *See generally Witte v. Clark Cnty. Sch. Dist.*, 197 F.3d 1271, 1276 (9th Cir. 1999) ("Here, the parties have so agreed during informal administrative procedures. In other words, Plaintiff in fact has used administrative procedures to secure the remedies that are available under the IDEA."), *overruled by Payne v. Peninsula Sch. Dist.*, 653 F.3d 863 (9th Cir. 2011)[4]; *Weber v. Cranston Sch. Comm.*, 212 F.3d 41, 53 (1st Cir. 2000) (holding that a mediated settlement agreement did not constitute exhaustion under IDEA); *Hacienda La Puente Unified Sch. Dist. of Los Angeles v. Honig*, 976 F.2d 487 (9th Cir. 1992) (discussing, among other things, the California state statutory requirements to ensure compliance with IDEA); *C.B. v. Sonora School District*, 691 F.Supp.2d 1123 (E.D. Cal. 2009) (collecting cases where parents entered into settlement agreements with school districts and whether the settlement agreements constituted exhaustion under IDEA); *Roe ex rel. Preschooler II v. Nevada*, 332 F.Supp.2d 1331, 1338-39 (D. Nev. 2004) (discussing IDEA exhaustion requirements in the Nevada state educational system and discussing an appeal to a state review officer), *overruled on other grounds by Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175 (9th Cir. 2007).

Defendants filed the instant renewed motion to dismiss and the court finds that exhaustion is required if plaintiffs proceed with their remedies that would be available under IDEA. However, the issue of whether exhaustion occurred in this case was not squarely addressed in the briefings.

---

[4] This court presently takes no opinion on whether the *Payne* decision overruled any part of the *Witte* decision that discusses informal exhaustion.

James C. Mahan
U.S. District Judge

- 11 -

The court orders defendant to file a supplement no later than July 29, 2013, plaintiffs shall file a response to the supplement no later than Monday, August 5, 2013,, and defendants shall file a reply if they wish to do so no later than August 12, 2013. The court focus the issue of the supplemental briefing to whether: (1) under the facts in this case and any relevant law, case law or statutory law, exhaustion occurred in this case prior to plaintiffs' suit; (2) the extent, if any, that an informal exhaustion occurred and whether IDEA permits informal exhaustion; and, (3) the status of plaintiffs' claims seeking non-IDEA relief if exhaustion has occurred.

**III.    Partial Summary Judgment as to Alexandria and David Cherry's Damages**

Defendants filed a motion for partial summary judgment seeking resolution of certain damages computations by Jacob's parents, Alexandria and David. During discovery, plaintiffs revised their damages calculations. Alexandria personally seeks damages in the amount of $861,369.60. David personally seeks damages in the amount of $392,098.00. Both of these figures are in addition to the damages sought on behalf of Jacob. The sum of damages sought by Alexandria and David slightly more than doubles the amount of damages sought on behalf of Jacob.

Defendants file the instant motion arguing that Jacob's parents cannot recover damages for their own pain and suffering or lost earnings based on harms committed against Jacob (assuming there is liability for actions against Jacob). Defendants argue that plaintiffs may recover damages for pain and suffering or lost earnings based only on harms that occurred to them personally, not for emotional harms from wrongs that occurred to Jacob (if any).

With the exception of claim number nine, a negligent infliction of emotional distress claim, the majority of the alleged harms in the complaint and arguments in the motions focus on events that happened to Jacob. Even though the majority of the alleged harms in the complaint and arguments made in the motions pertain to events that happened to Jacob, the majority of the damages sought in this action are not for Jacob. The majority of the damages sought are for Alexandria and David. The amount of damages sought for Alexandria and David equals $1,253,467.60, while damages sought for Jacob total $624,842.50.

Plaintiffs first six causes of action against the defendants are brought for alleged constitutional violations pursuant to 42 U.S.C. § 1983. The latter four cases of action are state law causes of action. The court addresses whether the parents can recover damages for each of the causes of action in turn.

*A.   Constitutional Violations Pursuant to 42 U.S.C. § 1983*

Plaintiffs have alleged the following constitutional violations pursuant to 42 U.S.C. § 1983: (1) substantive due process and (2) equal protection.

The first cause of action, for violations of substantive due process, alleges harms that occurred primarily against Jacob. (*See* amended compl. at ¶ 27 (alleging constitutional violations for defendants failure to feed, hydrate, communicate, and care for Jacob)). Similarly, the second cause of action, for violations of equal protection, alleges harms that occurred primarily to Jacob. (*See* amended compl. at ¶ 33 (alleging segregation of Jacob from other students in the class based on his race)).

Except for certain exception not applicable in the instant case, "[o]nly the purported victim . . . may prosecute a section 1983 claim." *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000); *Dohaish v. Tooley*, 670 F.2d 934, 936 (10th Cir. 1982) ("[T]he § 1983 civil rights action is a personal suit. It does not accrue to a relative. . . ."). A constitutional violation is personal to the individual injured. *Broadnax v. Webb*, 892 F.Supp.188, 190 (E.D. Mich. 1995).

In the causes of action for substantive due process and equal protection, the majority of the harm occurred to Jacob. The court grants defendants' motion to the extent that it seeks to enforce or clarify that Alexandria and David may seek to recover only damages for harms they personally suffered under either of these causes of action, and not any harms that occurred to Jacob. *See Burrow By and Through Burrow v. Postville Cmty. Sch. Dist.*, 929 F.Supp. 1193, 1208 (N.D. Iowa 1996) ("[T]he court finds that Lisa's parents lack standing to bring individual claims under § 1983 based upon a deprivation of Lisa's constitutional rights. Further, Lisa's parents have not asserted that the Defendants deprived them of any of their own constitutional rights.").

. . .

B.  *Conspiracy Under § 1985*

Plaintiffs' third cause of action is for an alleged conspiracy by defendants that deprived plaintiffs, mostly Jacob, of due process rights violations pursuant to 42 U.S.C. § 1985. The cause of action focuses on defendants' alleged actions to disseminate false information about Jacob so that he would be isolated from other students and potentially reassigned to a different school. (*See* amended compl. at ¶ 39). The cause of action clearly focuses on conduct occurring against Jacob, not his parents.

The motion is granted to the extent it seeks to limit Alexandria's and David's damages to harms they personally suffered and that they may not recover for harms committed against Jacob. *See Fobbs v. Holy Cross Health Sys. Corp.*, 29 F.3d 1439, 1450 (9th Cir. 1994) (stating that in a § 1985 claim a plaintiff "does not have standing to bring a suit on behalf of his patients, where he seeks money damages."), *overruled on other grounds by Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131 (9th Cir. 2001).

C.  *Section 504 of the Rehabilitation Act and the Americans with Disability Act*

"There is not significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act." *Zukle v. Regents of Univ. of California*, 166 F.3d 1041, 1045 n. 11 (9th Cir. 1999); 42 U.S.C. § 12133 ("The remedies, procedures, and rights set forth in [the Rehabilitation Act] shall be the remedies, procedures, and rights [applicable to ADA claims]."

The Ninth Circuit has held that a parent may pursue damages incurred from "enforcing the rights of [the child] and incurring expenses for his benefit." *Blanchard v. Morton Sch. Dist.*, 509 F.3d 934, 938 (9th Cir. 2007); *see Greater Los Angeles Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1115 (9th Cir. 1987) (holding that under section 504 a father could seek damages to " recover[ expenses] he incurred to secure for his daughter an education that the school district was legally obligated to provide.").

No court in the Ninth Circuit has held that a parent may recover damages for pain and suffering based on a violation of their child's rights under section 504 or the ADA. This court declines to create law expanding the scope of recoverable damages under section 504 or the ADA.

The court grants the motion to the extent it seeks to preclude Alexandria and David from recovering damages for their personal pain and suffering stemming from a violation of Jacob's rights under section 504 or the ADA.[5]

D.  *Defamation*

Plaintiffs' seventh cause of action is for defamation. The court has reviewed the complaint and factual representations in the motions. Every allegedly defamatory statement made by defendants concerned Jacob, his behavior, and his actions at Twitchell. Plaintiffs do not allege that any defendant made any defamatory statement against either Alexandria or David.

Parents may not recover for defamatory statements made against their children. *Chaiken v. VV Pub. Corp.*, no. 91 civ. 2102-JFK, 1992 WL 168282, at *2 (S.D.N.Y. June 30, 1992) ("It is undisputed that a cause of action for libel is not derivative and that the defamatory statements must concern the named plaintiff.") (citing Restatement (Second) of Torts § 564 (1977)); *Vice v. Kasprzak*, 318 S.W.3d 1, 18 (Tex. App. 2009) ("A family member does not have a cause of action based on the defamation of another family member."); *Johnson v. KTBS, Inc.*, 889 So.2d 329, 333 (La. App. 2d Cir. 2004) ("The tort action of defamation is personal to the party defamed. The general rule precludes a person from recovering for a defamatory statement made about another, even if the statement indirectly inflicts some injury upon the party seeking recovery.").

Alexandria and David may not recover any personal damages for any defamatory statement made against Jacob.

E.  *Invasion of Privacy/False Light*

Plaintiffs' eighth cause of action is for invasion of privacy and false light. The complaint alleges that defendants "gave public light to private facts regarding JACOB's educational and medical status." (Amended compl. at ¶ 69). Additionally, paragraph 70 of the complaint, which contains much of the alleged factual basis for the invasion of privacy and false light claims, mentions five revelations defendants made about Jacob that invaded his privacy or placed him in a false light.

---

[5] However, Alexandria and David may recover damages to the extent that they incurred damages "enforcing the rights of [their] son and incurring expenses for his benefit." *Blanchard*, 509 F.3d at 938. These recoverable expenses are potentially limited according to the analysis in section II *supra*.

James C. Mahan
U.S. District Judge

- 15 -

1  (*Id.* at ¶ 70). The publications generally refer to Jacob's behavior and purported danger to other
2  students in the class. (*Id.* at ¶ 70).

3  The cause of action mentions Alexandria only once. (*Id.* at ¶ 70 (alleging defendants
4  "publicized falsely that ALEXANDRIA CHERRY had overmedicated [sic] JACOB")). The cause
5  of action does not mention David at all.

6  The cause of action for invasion of privacy/false light is available only to the person whose
7  reputation or privacy has been violated. "[T]he right of privacy is purely personal." *Moreno v.*
8  *Hanford Sentinel, Inc.*, 172 Cal.App.4th 1125, 1131 (Cal. 5th Ct. App. 2009) (holding that an
9  invasion of privacy/false light cause of action "cannot be asserted by anyone other than the person
10 whose privacy has been invaded.").

11 Neither parent may recover damages for any invasion of privacy/false light committed against
12 Jacob. David may not recover any damages at all under this cause of action because nothing in the
13 complaint alleges any violation of his right to privacy or that any defendant placed him in a false
14 light. Alexandria may recover under this cause of action only for her alleged invasion of privacy and
15 being placed in a false light, not for any potential damages to Jacob.

16     *F.     Conclusion on Damages*

17 The court has addressed only seven of the ten causes of action. The court finds that any
18 potential damages by the parents are so intertwined with a merits analysis that resolution should
19 occur together at some later date.[6]

20 In summary, Alexandria and David Cherry disclosed during discovery that they are personally
21 seeking $1,253,467.60 in damages. Alexandria and David also disclosed during discovery that they
22 are seeking $624,842.50 on behalf of Jacob. Of the $624,842.50 sought on behalf of Jacob,
23 $346,500 is for private school and private therapy.

24 This means that plaintiffs seek $278,342.50 in non-education related damages for Jacob.
25 Meanwhile, Alexandria and David seek almost $1,000,000 more in damages for themselves. Most

---

[6] Arguments concerning damages on the remaining causes of action not discussed in this section, along with the arguments made concerning the dismissal of Piilo and Smith, are denied without prejudiced and may be raised in a later motion.

**James C. Mahan**
**U.S. District Judge**

- 16 -

of the allegedly wrongful conduct in this case occurred to Jacob, not Alexandria or David. At this stage in the litigation, the court takes no opinion on the specific damages alleged by Alexandria and David. However, to the extent that any damages sought by Alexandria and David are actually for any distress from harm to Jacob, then those damages are improper.

### IV.  Counter Summary Judgments Regarding Liability

The court finds that the countermotions for summary judgment (docs. ## 63 and 64) as to liability are premature at this stage. The court must first determine the outstanding issues regarding exhaustion as discussed in section II. The motions are dismissed without prejudice.[7]

### V.  Motion to Seal

Defendants have sought to seal certain documents filed by plaintiffs that contain the names of children in Jacob's classroom and the parents of the children in the classroom. Plaintiffs have not opposed the motion. Simply, defendants move the court to seal plaintiffs' response to defendants motion for partial summary judgment (doc. # 49) and plaintiffs' countermotion for summary judgment as to liability (doc. # 64).

Plaintiffs requested via discovery certain documents that contained personal identification information of children in Jacob's class and parents of those children that defendants believed was protected by the Family Education Rights and Privacy Act ("FERPA"). Defendants initially objected to disclosing the documents in discovery. Magistrate Judge Foley ordered defendants to disclose the information. (Doc. # 43). Magistrate Judge Foley further ordered that the parties shall identify children in Jacob's class and the parents of children in Jacob's class by initials (*Id.*).

Plaintiffs' countermotion and response, and certain exhibits attached thereto, identify several of the children and parents by name. CCSD moves the court to essentially expand Magistrate Judge Foley's order to include dispositive motions.

A court may seal dispositive documents and exhibits upon a showing of "compelling reasons" to seal. *Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006).

---

[7] The deadline date for filing dispositive motions may be extended to a date mutually agreeable between the parties and the court at the parties' request.

**James C. Mahan**
**U.S. District Judge**

- 17 -

1  The compelling reasons must be "supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process." *Id.* (internal citations and quotations omitted).

Pursuant to FERPA, schools are prohibited from disclosing personally identifying information of students. "Personally identifiable information" includes any list of personal characteristics that would make a student's identity easy to trace, and specifically includes "[t]he name of the student's parent or other family members." 34 C.F.R. § 99.3.

The court finds compelling reasons to seal due to the federally imposed requirements on CCSD. Defendants do not actually seek to seal any dispositive motions. Defendants request only that plaintiffs use initials for the identities of students and parents of those students in Jacob's class. The court finds compelling reasons to use initials because the public has no legitimate interest in the actual identity of any particular parent or student.

Plaintiff does not oppose the motion. The court finds compelling reasons to grant the motion and both parties shall use initials when identifying other children from any of Jacob's classes or the parents of any of those children. As applied to this case, the court will seal plaintiffs' motions (docs. ## 49 and 64) that name individual parents or students. The public has no real interest in the content of these motions because they are moot. *See* section IV *supra*. When, and if, parties file dispositive motions for summary judgment as to liability then they shall use initials for parents and students in Jacob's class.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants' motion for partial summary judgment (doc. # 45) be, and the same hereby, is GRANTED in part and DENIED without prejudice in part consistent with the foregoing.

IT IS FURTHER ORDERED that the parties shall file supplemental briefing pertaining to defendants renewed motion to dismiss, or, in the alternative, motion for partial summary judgment (doc. # 48) consistent with the briefing schedule in section II *supra*.

James C. Mahan
U.S. District Judge

- 18 -

1    IT IS FURTHER ORDERED that defendants' motion to seal (doc. # 54) be, and the same
2 hereby, is GRANTED consistent with the foregoing.  The clerk of the court shall seal document
3 numbers 49 and 64.
4    IT IS FURTHER ORDERED that defendants' countermotion for summary judgment (doc.
5 # 63) be, and the same hereby, is DENIED without prejudice.
6    IT IS FURTHER ORDERED that plaintiffs' countermotion for summary judgment (doc. #
7 64) be, and the same hereby, is DENIED without prejudice.
8    DATED July 22, 2013.

                            _____
                            **UNITED STATES DISTRICT JUDGE**

**James C. Mahan**
**U.S. District Judge**